IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RODGER WAYNE MITCHELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:07-CV-00174 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

# REPORT AND RECOMMENDATION
# TO DENY PETITION FOR WRIT OF HABEAS CORPUS

Petitioner RODGER WAYNE MITCHELL has filed a Petition for a Writ of Habeas Corpus

by a Person in State Custody challenging his conviction out of the 64th Judicial District Court of

Castro County, Texas, for the felony offense of burglary of a habitation. For the reasons hereinafter

expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal

habeas corpus relief should be DENIED.

## I.
## PROCEDURAL HISTORY

On June 28, 2005, petitioner was indicted for burglary of a habitation. *State v. Mitchell*,

Cause No. A3024-0506. Despite his plea of not guilty, a jury found petitioner guilty of the offense

and sentenced him to twenty years' confinement in the Texas Department of Criminal Justice,

Correctional Institutions Division.

Petitioner appealed his conviction and sentence to the Seventh Court of Appeals, which affirmed the conviction.[1]  *Mitchell v. State*, No. 07-06-00056-CR, 2006 WL 2945362 (Tex. App.—Amarillo Oct. 16, 2006, no pet.).  Petitioner's application for state habeas corpus relief was denied without written order.  *Ex parte Mitchell*, App. No. WR-67,137-01.[2]  Petitioner's federal petition for habeas relief followed.

II.

FACTUAL HISTORY

The State presented evidence at petitioner's trial that Bob and Darlene Walters lived in Dimmitt, Texas.  They were friends with petitioner, had lent petitioner money, and had provided a house for petitioner to live in rent free.  (Reporter's Record [hereinafter R.], 5:23-27).  In March or April of 2005, the Walters noticed money kept in various places in their home was missing.  (R. 5:28, 67).  This continued for some time, and, in early May, Mrs. Walters approached the sheriff of Castro County.  He advised her to purchase a video camera and set it up in the home.  (R. 5:54-6). Soon thereafter, the Walters set up a video camera to record their house when they were not home. (R. 5:68-70).

On May 22, 2005, the Walters left their house at around 4:00 or 4:30 p.m. to visit petitioner. Mrs. Walters turned the video camera on before they left the house (R. 5:71).  After speaking with petitioner for a period of time, at approximately 5:00 or 5:15 p.m., petitioner left telling them he was going to work.  Mrs. Walters attended to personal matters while Mr. Walters stayed behind and mowed petitioner's yard for him.  When Mrs. Walters returned home, she watched that day's

---

[1]  On direct appeal, petitioner's appellate attorney filed an *Anders* brief.

[2]  No findings were made by the trial court regarding petitioner's state writ of habeas corpus.

Page 2 of 24

recordings. (R. 5:74-5). The recording showed petitioner looking through various items in the home and twice walking back to the bedroom. Mrs. Walters took the videotape to the sheriff that same day who, in turn, gave it to the district attorney. (R. 5:56-7, 75-6).

Mrs. Walters testified at trial that petitioner had taken $136.00 on May 22, 2005, including money from Mr. Walters's billfold, from a bedroom closet, from inside of a ledger sitting out in the house, and from a cabinet. (R. 5:76-80). Mrs. Walters further testified she was certain the video of petitioner was taken on May 22, 2005; regardless of the day, however, petitioner did not have permission to be in the Walters' house without them being there, had no reason to search through their belongings and home, and did not have permission to take their money. (R. 5:95-6). The videotape was admitted into evidence and played for the jury. (R. 5:78-9).

The defense presented testimony from two witnesses. Lena High testified that on May 22, 2005, she saw petitioner at a relative's house at 3:00 p.m., where they visited for an hour to an hour and a half. (R. 5:113-16). The two separated but later rejoined at petitioner's home and traveled to the house of Diana Haskins, High's niece. They arrived at the house at 5:00 p.m. and stayed until approximately 9:00 p.m. (R. 5:119-21). High was certain this occurred on May 22, 2005, because she traveled from her home in Weatherford that previous Friday to attend a family reunion. (R. 5:123). Diana Haskins testified her aunt, Lena High, and petitioner arrived at her home on May 22, 2005, around 5:35 p.m. or 5:40 p.m. and did not leave until after dark. (R. 5:135-36). On cross-examination, Haskins testified she could not be sure the Sunday petitioner and High were at her home was May 22, 2005, only that they were at her home on a Sunday on or before May 22, 2005. (R. 5:136-37).

## III.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.     The evidence is legally and factually insufficient to support the conviction.

2.     Petitioner was denied his right to a fair and impartial trial because the trial court abused its discretion by:

      a.     allowing a State witness to testify at punishment after she violated the "Rule";

      b.     failing to *sua sponte* give a jury instruction at punishment that any extraneous acts must be proven beyond a reasonable doubt;

      c.     allowing a State witness who was married to the prosecutor to testify at punishment;

      d.     failing to *sua sponte* allow a change of venue when most of the jury pool stated that they knew or knew of the complainants;

      e.     refusing to give the jury an instruction on alibi; and

      f.     trying to enter into negotiations to convince petitioner to plead guilty.[3]

3.     Petitioner was denied effective assistance of counsel at trial because counsel failed to:

      a.     require the State to prove the proper predicate before entering the videotape into evidence;

      b.     request a reasonable doubt jury instruction at the punishment phase of the trial;

---

[3] In his answer to this petition, respondent contends petitioner has not sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c) with respect to his first and second grounds of relief. Because it appears petitioner is entitled to no habeas relief on the allegedly unexhausted claims, the Court bypasses the procedural issue and proceeds to the merits of the claims. *See* 28 U.S.C. § 2254(b)(2) (providing a reviewing court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

     c.      contact other potential witnesses and properly investigate petitioner's alibi defense;

     d.      make an independent investigation of the case, interview defense witnesses, and introduce exculpatory records into evidence;

     e.      request a change of venue;

     f.      present mitigating evidence at the punishment phase of trial; and

     g.      object to egregiously prejudicial evidence and prosecutorial remarks.

4.      Petitioner was denied his right to due process and to be free from cruel and unusual punishment because the Special Prosecutor:

     a.      violated a motion in limine;

     b.      commented during trial on petitioner's guilt and on petitioner's prior convictions;

     c.      called a witness during the punishment phase to testify to petitioner's character and uncorroborated bad acts; and

     d.      failed to prove all elements of the crime beyond a reasonable doubt.


## IV.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows the prior adjudication:

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

All determinations of a factual issue by a state court are presumed correct. 28 U.S.C. § 2254(e). The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, and is therefore entitled to the presumption of correctness. 28 U.S.C. § 2254(e); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence. At the state habeas level, he attacked his conviction on almost all the same grounds raised in his federal petition. The Court of Criminal Appeals denied petitioner's state habeas application without written order. *Ex parte Mitchell*, App. No. WR-67,137-01. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claim on the merits. *See Torres*, 943 S.W.2d at 472. Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court decision that petitioner was not denied his rights was contrary to, or involved an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts in light of the evidence before the state court. *See* 28 U.S.C. § 2254(d). Petitioner has not shown any state court decision was contrary to federal law or involved an unreasonable application of the facts. Indeed, petitioner has wholly failed to raise arguments addressing these issues, choosing instead to merely restate the grounds of error raised at the state court level. Even if petitioner had properly raised the issues with which this Court is concerned, a review of his claims establishes none of them have any merit.

## V.
## MERITS

A.      Sufficiency of the Evidence

In his first ground for relief, petitioner asserts the evidence is factually and legally insufficient to support his conviction for burglary. While Texas utilizes the more exacting factual sufficiency standard, this standard does not implicate federal constitutional concerns. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Therefore, this Court will not consider petitioner's claim of factual insufficiency.

Upon federal habeas corpus review, a court may only apply the standard of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 320 (1979). The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* A federal habeas court may not substitute its view of the evidence for the fact-finder's determination. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

In this case, a videotape of petitioner rifling through the belongings in the Walters's home was admitted into evidence, as was testimony from the victim that petitioner did not have permission to be in the house when they were not there, and there was no reason for him to be searching though the house. The jury additionally heard testimony that Mrs. Walters determined petitioner had stolen $136.00 on the day he was recorded in the house. (R. 5:80). In sum, the jury was presented with evidence that petitioner entered a habitation without the owner's consent and with the apparent intent to commit theft. *See* Tex. Penal Code Ann. § 30.02 (Vernon 2003). The conviction had sufficient evidentiary support to pass constitutional review. *See Jackson*, 443 U.S. at 320.

Petitioner complains: there was no eyewitness testimony placing him in the Walters's home without their consent; there was no fingerprint evidence indicating he took money from the Walters; the recording only showed him looking for a wallet Mr. Walters had misplaced; and there was no conclusive evidence he took $136.00. The jury weighed the testimony and evidence in the case, drew inferences, and ultimately determined petitioner had committed burglary of a habitation. This Court will not question the fact-finder's determination on these fact-specific issues. *See Alexander*, 775 F.2d at 598. In the light most favorable to the prosecution, there was ample evidence from which a rational jury could find beyond a reasonable doubt that petitioner committed burglary of a habitation, the Walters's home, on May 22, 2005. *See id*. Petitioner's first ground for relief is without merit and should be denied.

B.      Trial Court Error

In his second ground for relief, petitioner contends the trial court erred by: 1) allowing a State witness to testify at punishment after she violated the "Rule"; 2) failing to *sua sponte* give a reasonable doubt jury instruction at punishment; 3) allowing a State witness, who was married to the Special Prosecutor, to testify at punishment; 4) failing to *sua sponte* allow a change of venue; 5) refusing to give the jury an instruction on alibi; and 6) trying to enter into negotiations to convince petitioner to plead guilty.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner is entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Moreover, a federal habeas court does not sit in review of a state trial court's evidentiary rulings. *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992). Such rulings will mandate habeas relief only when the error is so extreme that it constitutes a denial of fundamental fairness. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998)

1.    Witness and Violation of the "Rule"

In his first subclaim, petitioner asserts the trial court erred in allowing a witness who had violated the witness sequestration rule to testify at punishment. In his third subclaim, petitioner claims the trial court erred in permitting this same witness to testify because she was the wife of the Special Prosecutor who tried the case.

Regarding the trial court's decision to allow a State's witness to testify at punishment, the trial court held a hearing on whether State's witness Eloyce Matthews had violated the witness sequestration rule. *See* Tex. R. Evid. 614. Under questioning by defense counsel, Matthews testified that during the guilt phase of the trial, she looked through the window into the courtroom but did not see the recording of petitioner. (R. 6:14-15). She also testified she was in the courtroom at the end of the day, but did not hear any testimony or closing arguments because they had concluded, and petitioner was in the process of deciding whether to allow the jury to assess punishment. (*Id.*). The trial court overruled defense counsel's objection to Matthews's testimony. (R. 6:17).

Matthews testified at the punishment stage that she is a community supervision officer, and petitioner had been one of her clients. (R. 6:18). She testified she had questioned petitioner at one point about why he had thefts on his record, and petitioner told her he had been diagnosed with a disease which made him like to steal and that he did not do it because he needed the money. (R. 6:19).

Rule 614 of the Texas Rules of Evidence states, at the request of a party, the court shall order witnesses excluded "so that they cannot hear the testimony of other witnesses." The record before this Court is that Matthews did not hear the testimony of other witnesses, nor did she view the videotape. (R. 6:14-15). Thus, the state rule was not violated. *See* Tex. R. Evid. 614.

Petitioner relies on *Haas v. State*, 498 S.W.2d 206 (Tex. Crim. App. 1973), for support. In *Haas*, the Court of Criminal Appeals held whether violation of the witness exclusionary rule is reversible error depends on whether one witness actually hears the testimony of the other witness and whether the testimony contradicts the other witness's testimony. *Id*. Matthews, however, did not hear the testimony of any other witness. (R. 6:14-15). Allowing her testimony was, therefore, not reversible error under *Haas*. *See id*. Additionally, petitioner has failed to show any error in allowing the testimony constituted a denial of fundamental fairness. *See Little*, 162 F.3d at 862.

Petitioner also claims the trial court erred in permitting Matthews to testify at punishment because she was the wife of the Special Prosecutor. Petitioner has presented no support for his claim that Matthews was, in fact, the wife of the prosecutor, nor has he presented any case law to support his claim that even if she was the wife of the prosecutor, her testimony was not permissible. *See Koch v. Puckett*, 907 S.W.2d 524, 530 (5th Cir. 1990) (holding a conclusory allegation is insufficient to raise a constitutional issue on habeas review).

In sum, petitioner has not established how any error relating to Matthew's testimony caused harm of a constitutional magnitude. *See McGuire*, 502 U.S. at 67-68. Assuming Matthews was married to the prosecutor and assuming she did overhear testimony or evidence presented during the guilt phase trial, petitioner has not shown such error had a substantial and injurious effect on the jury's sentencing determination. *See Brecht*, 507 U.S. at 637-38. Petitioner is not entitled to relief on this claim.

2.     <u>Reasonable Doubt Instruction</u>

Petitioner next contends the trial court erred in failing to *sua sponte* submit an instruction to the jury at the punishment phase of the trial instructing the jury it could not consider extraneous offenses or bad acts unless they were proven beyond a reasonable doubt. Section 37.07 § 3(a)(1) of the Texas Code of Criminal Procedure provides evidence of an extraneous crime or bad act committed by a defendant may be admitted into evidence if it is shown beyond a reasonable doubt to have been committed by the defendant, regardless of whether he has previously been charged with or convicted of the crime or act. Tex. Code Crim. Proc. Ann. § 3(a)(1) (Vernon 2007). The Court of Criminal Appeals has held this requirement that extraneous offense and bad act evidence be proven beyond a reasonable doubt is an evidentiary rule, but it has no constitutional underpinnings. *Huizar v. State*, 12 S.W.3d 479, 482 (Tex. Crim. App. 2000). Moreover, "[i]mproper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *McGuire*, 502 U.S. at 71-72)).

In this case, neither party requested the jury be instructed that it had to determine petitioner was guilty beyond a reasonable doubt of extraneous offenses and bad acts before it could consider them in punishment. The trial court did not *sua sponte* give such an instruction, which may have

been improper under Texas evidentiary law.  *See Huizar*, 12 S.W.3d at 482.  Petitioner, however, has failed to show his constitutional rights were violated.  *See McGuire*, 502 U.S. at 67-68.

Moreover, petitioner has not shown this alleged error had a substantial and injurious effect on the punishment verdict.  *See Brecht*, 507 U.S. at 637-38.  The State presented evidence petitioner was previously convicted of three felonies:  two state jail felony convictions for burglary and forgery and a felony conviction for burglary.  (R. 6:11-12; R. 7:State's Exhibits 2-4).  Petitioner does not contend he was not convicted in these cases or that he was not guilty.  Indeed, petitioner pled guilty in these cases.  No other extraneous offense or bad act evidence, except these prior convictions, was admitted into evidence.  The only other evidence presented at the punishment phase was the testimony from Eloyce Matthews that petitioner told her he stole things because he enjoyed it.  (R. 6:19).  This is not an extraneous bad act, and the evidence presented at the guilt phase already established petitioner stole money when it was not necessary. Petitioner has shown no constitutional harm due to any failure to include a reasonable doubt instruction in the punishment-stage jury charge.  *See Brecht*, 507 U.S. at 637-38.  Petitioner is not entitled to relief on this claim.

3.    Change of Venue

Petitioner next contends the trial court erred in not *sua sponte* changing venue when members of the venire indicated they knew the victims.  In deciding whether the trial court abused its discretion in denying a motion to change venue, the reviewing court determines whether there existed such a prejudice in the community that it is doubtful the defendant received a fair trial by an impartial jury.  *Etheridge v. State*, 903 S.W.2d 1, 6 (Tex. Crim. App. 1994).  Similarly, a reviewing court must make the same determination when questioning whether venue should have been changed *sua sponte*.  *See* Tex. Code Crim. Proc. art. 31.01.  In a criminal trial, it is not

necessary that jurors be totally ignorant of the facts and issues involved, but rather that they be able to set aside any impressions or opinions they may have and render a verdict based upon evidence presented. *Murray v. Florida*, 421 U.S. 794, 798-800 (1978); *Irvin v. Dowd*, 366 U.S. 717, 722-3 (1961).

Petitioner contends he could not receive a fair trial because members of the venire knew the victims. At the beginning of voir dire, the prosecutor asked the panel members whether they knew Mrs. Walters and then stated that "just about everybody" knew her. (R. 4:51). However, when defense counsel questioned the panel and specifically asked each member whether he or she knew the Walters and in what context, a majority of the members indicated they did not know either of the Walters. Of the remaining members who did know them, many knew them only casually or as acquaintances, some knew them from work or church, and some knew them through a bank or store. (R. 4:60-73). None of the veniremembers had spoken to the Walters about the burglary. (R. 4:70-72). All members indicated they could be fair and impartial jurors despite any relationship they had with the Walters. (R. 4:53, 77). In fact, the record reflects that a majority of the jury members did not know the Walters at all, and the ones who did knew them only casually and not as close friends. (R. 4:62-66; 4:96).

Thus, the record does not reflect there existed such a prejudice in the community against petitioner that it is doubtful he received a fair trial by an impartial jury. *See Etheridge*, 903 S.W.2d at 6. Accordingly, petitioner has failed to establish the trial court abused its discretion in failing to *sua sponte* change the venue for the trial under state law. *See* Tex. Code Crim. Proc. art. 31.01. More importantly, petitioner has failed to demonstrate how the vague familiarity some of the venire members had with the victims had a substantial and injurious effect on the verdict. *See Brecht*, 507

U.S. at 67-68. This claim is without merit because petitioner has not shown any error of constitutional dimension.

4.    Alibi Defense

Petitioner next contends the trial court erred in denying defense counsel's request to submit a jury instruction on alibi. When defense counsel requested the jury be instructed on alibi as a defense, the trial judge stated he was declining to do so under *Geisberg v. State*, 984 S.W.2d 245 (Tex. Crim. App. 1998), *cert. denied*, 525 U.S 1147 (1999). (R. 5:141-44). In *Geisberg*, the Court of Criminal Appeals held no alibi jury charge was needed because the general charge that a defendant is innocent until proven guilty beyond a reasonable doubt grants a defendant ample scope to argue alibi. *Id*. At 250. The court further concluded an alibi instruction would be an improper comment on the weight of the evidence. *Id*.

The jury in petitioner's case was instructed at the guilt phase that petitioner was presumed innocent and the prosecution had the burden of proving each element of the offense beyond a reasonable doubt. (Clerk's Record at 142). The jury was correctly instructed pursuant to Texas law, and the trial court did not abuse its discretion under state law in denying the requested alibi instruction. *See Geisberg*, 984 S.W.2s at 250. The defense presented testimony in support of an alibi. As the jury was required to find the prosecution had proven all of the elements of burglary beyond a reasonable doubt before finding petitioner guilty, in finding petitioner guilty, the jury rejected petitioner's alibi defense.

Moreover, even if state law was not correctly applied, a federal habeas court does not sit in review of a state court's interpretation of its own law. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). By denying petitioner's state habeas application without written order, the Court of

Criminal Appeals determined no error of state law occurred. *See Torres*, 943 S.W.2d at 472. This court will not review that determination of a state law matter by the Court of Criminal Appeals. *See Weeks*, 55 F.3d at 1063. Finally, even if it is assumed the trial court did err, petitioner has not shown how his constitutional rights were violated by such error. *See Brecht*, 507 U.S. at 637-38. This claim is not cognizable before this federal Court, and petitioner has not otherwise shown constitutional error.

     5.     <u>Plea Negotiations</u>.

     Finally, petitioner asserts the trial judge erred by inserting himself in plea negotiations in an attempt to have petitioner plead guilty. The portion of the trial record petitioner cites reflects that, *after* petitioner was found guilty by the jury, the prosecution offered petitioner a ten-year sentence recommendation if he chose to have the trial court determine punishment. (R. 5:185). Petitioner did not accept the offer because it also required him to give his truck to the Walters as restitution. (R. 5:188). Defense counsel questioned petitioner about the offer, and petitioner declined to accept it. The trial court informed petitioner at least four times that the decision was petitioner's alone. (R. 6:185-77). Petitioner has presented no evidence in support of his bare assertion that the trial judge attempted to involve himself in plea negotiations. *See Ross v. Estelle*, 964 F.2d 1008, 1011 (5th Cir. 1983). Even if the trial judge had interjected his opinion in the plea negotiations, petitioner was not affected by it since he ultimately elected to plead not guilty. Petitioner has not shown a substantial and injurious impact on the jury's sentence. *See Brecht*, 507 U.S. at 637-38. This claim is without merit and should be denied.

C.     <u>Ineffective Assistance of Trial Counsel</u>

     In his third ground for relief, petitioner contends trial counsel was ineffective in several

respects.  In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only his counsel's performance was deficient, but also the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness."  *Id.*  A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (*citing Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner must show a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong.  *Id.* at 697.

1.  <u>Proper Predicate for Videotape</u>

Petitioner first contends his attorneys were ineffective because they failed to require the State to lay the proper predicate for admission of the videotape into evidence.  Petitioner contends a proper predicate was not laid because the operator of the video camera, Darlene Walters, was "uneducated and unlicensed in the field of investigation," and therefore the reliability and trustworthiness of the videotape was tainted.  (*Petitioner's Memorandum of Laws and Legal Citations in Support of Habeas Corpus*, attached to Petition for Habeas Corpus, doc. 1, filed Aug. 20, 2007 [hereinafter "Brief"], pg. 9).

Petitioner, however, presents no support for the assertion that, because the video camera was set up and turned on and off by someone who is not an "investigator," no proper predicate was laid for the admission of the tape under state law.  Nor has petitioner shown his opportunity to cross-

examine Mrs. Walters was not an adequate way to present Walters's inexperience to the jury. Petitioner has not established any error occurred. *See* Tex. R. Evid. 901.

Moreover, it is beyond the scope of federal habeas review to review the correctness of a state court's evidentiary ruling or interpretation of state law. *Weeks*, 55 F.3d at 1063. The trial court admitted the tape into evidence, and the Texas Court of Criminal Appeals denied this claim at the state habeas level. In doing so, the highest state court determined no error of state law occurred. *See Torres*, 943 S.W.2d at 472. This Court cannot question that determination. *See Weeks*, 55 F.3d at 1063. Petitioner has failed to demonstrate deficient representation by his attorneys because he has failed to establish a proper predicate was not laid. *See Strickland*, 466 U.S. at 668. Additionally, petitioner has not shown prejudice because he cannot establish that, had his attorneys objected to the admission on predicate grounds, the trial court would have sustained the objection. *See id.*; Tex. R. Evid. 901. Because petitioner has failed to prove either prong of the *Strickland* standard, this claim should be denied.

2.     Reasonable Doubt Instruction

Petitioner next contends his attorneys were ineffective for failing to object when no reasonable doubt instruction was included in the punishment-stage jury charge. As noted earlier, the only extraneous offenses or bad acts admitted at the punishment phase of the trial were three prior convictions for offenses to which petitioner pled guilty. Petitioner does not allege he was not convicted of those offenses. Petitioner has failed to show prejudice because he has failed to show that if such an instruction been given there is a reasonable probability the result of the trial would have been different. *See Strickland*, 466 U.S. at 668. This claim is without merit.

### 3.    Investigation and Mitigation Evidence

Petitioner additionally contends his two attorneys were ineffective for failing to:  1) contact additional witnesses in support of his alibi defense; 2) properly investigate the case and interview defense witnesses; 3) introduce exculpatory records into evidence; and 4) present mitigation evidence at the punishment phase of the trial.  (*Brief*, pgs.12-13, 15).

In order for a petitioner to meet both prongs of the *Strickland* standard for failing to call a certain witness, he must show both that the testimony would have been favorable and that the witness would have testified at trial.  *See Alexander*, 775 F.2d at 602; *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

In this case, petitioner does not specify which additional witnesses were available to testify. Petitioner has also failed to show what their purported testimony would have been or that the witnesses were available to testify and, in fact, would have testified.  *See Alexander*, 775 F.2d at 602.  While petitioner alleges in general what some of the alibi testimony could have been,[4] petitioner has failed provide this Court with affidavits from the potential witnesses or any other evidence supporting his conclusion the jury would have rendered a not guilty verdict with the additional alibi evidence. Accordingly, petitioner has failed to meet the *Strickland* standard with respect to these claims, and they should be denied.  *See id.*; *Strickland*, 466 U.S. at 687.

### 4.    Change of Venue

Petitioner next contends his trial attorneys were ineffective for failing to request a change

---

[4]  May 22, 2005, the day of the burglary, was a Sunday.  While Mr. Walters was mowing the law at the house the Walters let petitioner live in rent free, petitioner was recorded rifling through the Walters' home and was ultimately linked to the theft of money in the house.  Petitioner now claims his neighbors could have testified the Walters never did yard work at the house on Sundays, thereby casting doubt on the veracity of the Walters' testimony.  Petitioner also avers his work records would have shown he did not have the opportunity to commit the burglary on May 22, 2005.

of venue.  Under Texas law, a change of venue may be granted in a criminal case upon the written motion of the defendant, upon proof "[t]hat there exists in the county . . . so great a prejudice against the [defendant] that he cannot obtain a fair and impartial trial."  Tex. Code Crim. Proc. Ann. art. 3103(a)(1) (Vernon 2006).

As set out previously, most of the members of the venire did not know the victims; some were merely acquainted with them.  (R. 4:62-66).  Given these facts and the great deference customarily owed to the tactical decisions of trial counsel in jury selection, the Court cannot conclude petitioner's attorneys rendered deficient representation.  *See Sharp v. Johnson*, 107 F.3d 282, 287-88 (5th Cir. 1997) (refusing to find representation deficient under a similar set of facts). There is nothing in the record indicating an overwhelming prejudice against petitioner existed in Castro County.  Therefore, petitioner's attorneys were not deficient in failing to file a motion to change venue.  *See* Tex. Code Crim. Proc. Ann. art 3103(a)(1); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding an attorney does not render ineffective assistance by failing to make futile motions or objections).

Indeed, it is this same absence of proof of jury pool bias that would defeat any claim of prejudice under *Strickland*, assuming petitioner had demonstrated deficient representation.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding petitioner's failure to show the trial court would have granted a motion to change venue defeated any claim of prejudice).  There is nothing indicating the trial court would have granted a motion to change venue had petitioner's attorneys filed such a  motion.  Having failed to show either deficiency or prejudice, this claim of ineffective assistance of counsel must fail.  *See Strickland*, 466 U.S. at 687.

5.      <u>Prejudicial Evidence and Remarks</u>

Petitioner asserts his attorneys were ineffective for failing to object to egregiously prejudicial evidence presented by the State and remarks made at his trial. Petitioner does not specify any particular evidence or remarks. This is a conclusory allegation and is insufficient to raise a constitutional issue on habeas review. *See United States v. Tomblin*, 46 F.3d 1369, 1376 n. 13 (5th Cir. 1995) (noting a brief must contain a legal arguments that indicate the basis for each contention); *Koch*, 907 S.W.2d at 530. Petitioner has failed to demonstrate deficient representation or prejudice. *See Strickland*, 466 U.S. at 687. Petitioner is not entitled to any relief on this point of error.

D.      <u>State Error</u>

In his fourth ground for relief, petitioner argues his constitutional rights were violated because the Special Prosecutor: 1) violated a motion in limine by offering evidence of extraneous offenses and bad acts at the punishment phase of the trial; 2) made statements throughout the trial that petitioner was guilty and referred to his prior convictions; 3) referred to improper testimony; and 4) failed to prove all the elements of burglary beyond a reasonable doubt.

1.      <u>Motion in Limine and Improper Statements</u>

The clerk's record includes a motion in limine filed by defense counsel the day before trial, in which counsel requests the prosecution and State's witnesses not refer, during the guilt phase of the trial, to prison time served by petitioner, to the relationship between petitioner and Mr. Walters while petitioner was in prison, to prison ministry or letters from prison, and to petitioner being confined and/or released from prison. (Clerk's Record at 120-21). No references to these topics were made at either the guilt or punishment phase of trial. There is no factual basis in the record supporting petitioner's allegations.

If petitioner's complaint is that the prosecution offered prior convictions at punishment, his complaint is without merit. Under state law, evidence may be offered at the punishment phase of a criminal trial as to any matter the trial court deems relevant to sentencing including the prior criminal record of the defendant and any evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). Upon the timely request of the defense, the State shall provide notice of its intent to introduce such evidence. *See id.* § 3(g).

The clerk's record in this case includes a letter from the prosecution informing defense counsel of the three prior offenses the State intended to offer at punishment, along with copies of the judgments. (Clerk's Record at 102-11). It appears the State complied with state law. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). More importantly, petitioner has failed to demonstrate how the State's use of his prior convictions resulted in a constitutional violation. *See Spencer v. Texas*, 385 U.S. 554, 578 (1967) (holding "prior-crimes evidence may be admitted at the guilt phase of trial").

Similarly, petitioner cites to no place in the record where the prosecutor improperly referenced petitioner's guilt or prior convictions. The prosecutor argued in closing that petitioner was, in fact, guilty of burglary, (R. 5:156-162, 174-79), and referred to petitioner's prior convictions during closing arguments at punishment, after they were properly admitted into evidence. (R. 6:30-32, 34-36). These actions were not contrary to any constitutional right. *See Spencer*, 385 U.S. at 578. Petitioner has shown no error.

2.    Prior Bad Acts Testimony

Petitioner next contends the prosecutor erred by having a witness testify at punishment about

petitioner's character and uncorroborated bad acts. Petitioner refers to the testimony of Eloyce Matthews, who had been petitioner's community supervision officer. Matthews testified that at one point she questioned petitioner about why he had thefts on his record, and petitioner had told her he had been diagnosed with a disease which made him steal and that he did not do it because he needed the money but because he liked it. (R. 6:19). Petitioner contends Matthews testified about prior convictions without proof and gave impermissible testimony about his character and prior bad acts.

As previously discussed, the State entered into evidence judgments from petitioner's three prior convictions, including burglary of a building, burglary of a residence, and forgery, for which he was ordered to pay restitution to the victim. (R. 7:State's Exs. 2-4). While Matthews testified generally to petitioner having "thefts" on his record, it is reasonable to assume she was referring to petitioner's convictions for burglary and forgery.

Even if she were not referring to those prior convictions, petitioner has not shown that, given the fact the State had already admitted evidence of three prior felony convictions into evidence, Matthews's brief testimony about "thefts" was prejudicial to the degree as to render petitioner's trial fundamentally unfair. *See Rogers v. Lynaugh*, 848 F.2d 606, 608-09 (5th Cir. 1988) (holding relief will be granted for a due process violation only where the misconduct resulted in denial of a fair trial).

### 3. Elements of Burglary

Finally, petitioner contends the prosecutor failed to prove all of the elements of burglary beyond a reasonable doubt. Here, petitioner is simply rearguing his claim that the evidence is insufficient to support his conviction, a claim this Court has already determined is without merit. The state court's denial of this ground for relief is not contrary to federal law, and petitioner is not

entitled to relief on this ground.

## VI.
## RECOMMENDATION

Petitioner has failed to show any state court proceedings resulted in a decision contrary to federal law or a decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner RODGER WAYNE MITCHELL be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of September, 2010.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See*

28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).